Haynes, Spencer & Company, Appellants, *v.* Second Baptist Church of St. Louis, Respondent.

### November 14, 1882.

1. There is an implied contract on the part of the owner to keep in readiness for the work a building of which he has possession, and upon which another person is, under contract, making improvements.

2. One who, under a contract, is doing the ornamental wood-work in a building destroyed by fire while under control of the owner, may recover a *quantum meruit* for the work done prior to the time of the fire.

3. An accidental fire is not the act of God or *vis major* excusing the performance of a contract.

4. Section 667 of the Revised Statutes has no application to this case.

Appeal from the St. Louis Circuit Court, Lindley, J. *Reversed and remanded*

W. A. Bickle, for the appellants, cited : *Cincinnati* v. *Stone*, 6 Ohio St. 39 ; *Railroad Co.* v. *Hanning*, 15 Wall. 649. Nothing short of inevitable accident will excuse. — *Gault* v. *Humes*, 20 Md. 297 ; *Burton* v. *Davis*, 15 La. An. 448 ; *Bizzel* v. *Booker*, 16 Ark. 308.

Charles F. Joy and Allen & Coste, for the appellants : The plaintiff in this action can recover for work and materials furnished the defendant, up to the time of the fire, on the ground that the defendant, in the view of the law, was put in default by the destruction of the church building, although no actual negligence be proved against him, upon the principle that, as a part of his contract, he undertook to furnish and have in existence a building wherein plaintiff might be enabled to complete his contract. — *Rawson* v. *Clark*, 70 Ill. 656 ; *Niblo* v. *Binsse*, 1 Keyes, 476 ; *Garretty* v. *Brazell*, 34 Iowa, 100 ; *Cleary* v. *Xphier*, 120 Mass. 210 ; *Wells* v. *Calnan*, 107 Mass. 514. When a party, by his own contract, creates a duty or charge upon himself, he is bound to make it good, notwithstanding any accident by

inevitable necessity, because he might have provided against it by his contract. — *Tompkins* v. *Dudley*, 25 N. Y. 272; 2 Pars. on Con. 35, 673, 523; *Lewis* v. *Atlas Ins. Co.*, 61 Mo. 534; *Hammer* v. *Breidenbach*, 31 Mo. 49. The owner is bound to pay the reasonable value of the work and material furnished by the contractor, being deemed to have accepted the benefit thereof; and if the contractor has imperfectly done his work, or abandoned it before completion, the owner has a right to subtract the amount of damage so sustained from the contractor's demand. — *Yeats* v. *Ballentine*, 56 Mo. 531, and cases cited; 2 Pars. on Con., pt. 2, sect. 5.

MADILL & RALSTON, for the respondent: Under the facts of this case, the law is, that the plaintiff is not entitled to recover anything, either on the contract or on a *quantum meruit*, for any portion of the pews, furniture, or materials destroyed. — *Appleby* v. *Myers*, 36 L. J. (N. s., C. L.) 331 [Exchequer Chamber on appeal from the Common Pleas]; *Sinclair* v. *Bowles*, 9 Barn. & Cress. 92; *Taylor* v. *Caldwell*, 3 Best & S. 826; *Brumby* v. *Smith*, 3 Ala. (N. s.) 123; *Wilson* v. *Knott*, 3 Humph. 473; *Lord* v. *Wheeler*, 1 Gray, 282; 2 Add. on Con. (1st Am. ed.) 552–564, sect. 869; Story on Bail. (9th ed.), sects. 426 *b* and 427 *a*; *Richardson* v. *Shaw*, 1 Mo. App. 234; *Sinnott* v. *Mullen*, 82 Pa. St. 333. The fact that a slight change was being made in a few of the pews at the time of the fire, in pursuance of defendant's request, which would have taken one man only two days to make, and was agreed to be paid for by defendant at its extra cost, did not constitute an acceptance of the work then done, or work an abandonment or rescission of the contract. Nor did the same authorize plaintiff to abandon its contract or sue upon a *quantum meruit*, as upon a general hiring, for the reasons that said change was very slight, was to be paid for at its extra cost, and was not completed when the church was burnt.—*Pepper* v. *Burland*, Peakes, p. 139, side p. 103; *Phillippi* v. *Mc-*

*Lean,* 5 Mo. App. 586; *M Cormick* v. *Conolly*, 2 Bay, 401; *Bank* v. *Patterson's Administrator*, 7 Cranch, 303; *Wright* v. *Wright*, 1 Litt. 179; 2 Smith's Ld. Cas. (7th Am. ed.) 50.

BAKEWELL, J., delivered the opinion of the court.

This is an action by an incorporated company, to recover of defendant, which is a corporation, the value of certain pews and other wood-work of a church edifice, and labor and materials furnished by plaintiff to defendant. The cause was tried by the court, a jury being waived, and the finding and judgment were for the defendant.

There are record admissions and testimony tending to show the following state of facts : Defendant was erecting a house of worship in St. Louis. It let out the work to different contractors, having separate contracts with the mason, carpenter, and other mechanics. The general direction of the work was under the control of an architect and superintendent employed by defendant. Defendant kept the building insured, increasing the insurance from time to time as the building progressed, insuring far enough ahead to cover any work after it was done. On January 2, 1879, the building caught fire from some unexplained accident. The answer alleges that this was without the fault or negligence of defendant, and the reply denies this, though it admits that the fire was accidental. The fire destroyed the church and everything in it.

The written contract between plaintiff and defendant provides that plaintiff shall make, finish, and put up complete, furnishing all labor and materials, the pews in the audience-room and in the gallery, the pulpit, and the screen over the pulpit and baptistry, and the organ front : the work to be of a described character and quality, and subject to the approval of the architect of defendant; for the sum of $4,800, to be paid on the completion and acceptance of the work. The work is to be put up complete, on or before

December, 1, 1873, under a forfeit of $10 a day for every day's delay beyond that time.

At the time of the fire, defendant was engaged in putting up the pews. The gallery pews were partly up; none of the pews in the audience-room were up, but they were scattered about on the floor; two pieces of the organ loft were in the building, but not put up. The baptistry-screen was partly up, and all of it was in the building. It would have taken five men about two weeks to set in order in the church what remained of plaintiff's contract. While the pews were being put up, some slight change from the contract was made in the construction of some pews, at the suggestion of the building committee of defendant; this change was nearly completed when the fire broke out. The work and materials furnished, were of the character and quality required by the contract, and reasonably worth the amounts charged in the bill of particulars filed with the petition. Some payments had been made, and the balance claimed remains unpaid.

If money is to be paid when the work is done, non-performance of the work is a good defence; and where there has been a partial performance only, and not a performance of what is substantial in the contract, as a general rule, plaintiff cannot recover. The rule always applies where the non-performance is voluntary on the plaintiff's part. But where the non-performance is caused by the defendant, or by the act of God, the rule is not always applied, and in this country (*Cutter* v. *Pavell*, 6 Term Rep. 320), has not been followed, but, in contracts for service, sickness and death have been held to excuse the non-performance of an entire contract.

If a workman undertakes to build a house, to be paid when the house is done, he cannot demand payment until he has complied with his contract; and if the house is destroyed by inevitable accident, it will be the loss of the contractor. And so we held in *Richardson* v. *Shaw* (1 Mo. App. 234), that, where the contract-price of the building is

to be paid in instalments, on the completion of certain specified portions of the work, though if the house be destroyed by accident, the employer would be bound to pay the instalments then due, yet he would not be responsible for the intermediate work and materials.

The case before us is not, however, an undertaking to build a house, but a contract to do certain wood-work in an erection under the control of defendant and not under the control of plaintiff. There is a difference. In the first case, the defendant makes no agreement as to the existence of the building; in the last case, the work contracted for cannot be done unless the building exists while it is being done and until it is completed, and it may be said that there is an implied agreement that the building shall be in existence as a condition precedent to doing the work upon it. It happens that contracts on their face appear to be obligatory on one party only, when it was manifestly the intention of the parties, and a part of the consideration, that there should be a corelative obligation on the other party. And " if the act to be done by the party binding himself can only be done upon a corresponding act being done or allowed by the other party, an obligation by the latter to do or allow to be done the act or thing necessary for the completion of the contract, will be necessarily implied." *Per* Hough, J., in *Lewis* v. *Insurance Co.*, 61 Mo. 538.

It is a maxim that *res perit domino suo;* and the rule of the common law is the civil-law rule, that if one is employed in making up the materials or adding his labor to the property of the employer, the risk is with the owner of the thing with which the labor is incorporated. And upon grounds applicable to the general contract of hire, in the absence of any special agreement or general usage, if the thing for which materials were furnished is destroyed before the work is done, the employer must pay for the work and materials, though they are lost to him. *Mene-*

*tone* v. *Athawes*, 3 Burr. 1592. But Story lays down the doctrine that where there is a contract to do work on a thing by the job, and the thing accidentally perishes, the workman would not be entitled to compensation *pro tanto* up to the time of the destruction, because the job must be treated as an entirety and be completed before the compensation under the agreement would be due. And *Appleby* v. *Myers* and *Brumby* v. *Smith*, which will be considered afterwards, are referred to in the notes to the later editions. Story on Bail. (9th ed.), sect. 426 *a, et seq.* He admits, however, that Pothier holds a different opinion, and thinks that, even then, the workman should recover *pro tanto.* But the observations of Story go only to some of the general principles applicable to the present case, and he does not consider the case in which the *res* is in the custody and control of the owner, and in which the contract implies that it shall remain in existence to receive the work.

*Brumby* v. *Smith* (3 Ala. 123) was decided in 1841, and is directly in point for respondent. A workman agreed to complete the carpenter-work on a house, and to receive a certain sum on the completion of the work, his employer furnishing the materials. The house and materials were destroyed by fire, without the fault of the workman, the house being in the possession of the employer. It is held that the workman could not recover a *pro rata* compensation. The case is put solely upon the ground that, by the express terms of the contract, the labor was not to be paid for until the work was completed, and that, whenever this is rendered impossible without the act of the employer, there can be no recovery.

But principles applicable to the case at bar seem to have been much more carefully considered and applied in the case of *Appleby* v. *Myers* (1 L. R. C. P. 614), decided in 1866. In that case, plaintiffs contracted with defendant to erect, upon premises in defendant's possession, a steam engine and machinery, the work being by the contract

divided into ten different parts, and separate prices fixed upon each part, no time being fixed for payment. All the parts of the work were far advanced towards completion, and some of them so nearly finished that the defendant had used them for the purposes of his business, but no one of them was absolutely complete, though a considerable proportion of the materials for that purpose was upon the building, when the whole premises, with the machinery and materials, were destroyed by an accidental fire. It was held unanimously by the judges of the common pleas, that plaintiffs were not entitled to recover the whole contract-price ; but that, inasmuch as the machinery was to be fixed to defendant's premises so that the parts of it when, and as, fixed, would become his property and be subject to his dominion, and the contract must be taken to involve an implied promise on the defendant's part to keep up the building, they were entitled to be paid as upon an implied contract, the value of the work and materials actually done and supplied by them under the agreement. The court says that the contract falls within a qualification of the principle that, where there is a positive contract to do a thing in itself not unlawful, the contractor must perform it or pay damages. The qualification is this : That, in the absence of any express or implied warranty that the thing shall exist, the contract is not to be construed as a positive contract, but as subject to an implied condition that the parties shall be excused by the perishing of the thing before the breach. As the machinery was to be so affixed to the building, that part of it would become defendant's property and subject to his dominion, it is held that there is an implied term that defendants shall provide the buildings and keep them in a fit state. No decision directly in point was cited to the court. But counsel referred to Story on Bailments, each relying on passages in his favor.

On appeal, in the Exchequer Chamber (2 L. R. C. P. 650), the judgment was reversed. On the argument, the

Alabama case (*Brumby* v. *Smith, supra*) was cited. The court did not agree with the court below in thinking that there was an absolute promise that the premises should continue fit to receive the work; and held that, as the premises were destroyed without fault on either side, the misfortune excused both parties from further performance of the contract, but gave a cause of action to neither; and said that, even on the supposition that the materials had become unalterably fixed to the defendant's premises, that the plaintiff, in their opinion, could recover nothing under such a contract as the one before them, unless the work was completed.

*Niblo* v. *Binsse* (1 Keyes, 477) was decided in 1864, in New York, reversing the supreme court. The premises were destroyed by an accidental fire, without any fault of plaintiff or defendant. Plaintiff undertook to put in steam-pipes and heaters at a price stipulated to be paid, and was working on the job when the fire occurred. It was held that, where the owner of the property retains possession, there is an implied obligation for him to have the premises ready for the labor to be performed upon them, and that the destruction of the premises put the defendant in default, and that plaintiff was entitled to recover for the work performed up to the time of the fire. In this case, the history of the litigation is just the reverse of that in *Appleby* v. *Myers*. The referee and the supreme court found for defendant (44 Barb. 54), holding that accidental fire is not to be called the act of God in such a sense as to excuse from the performance of a contract. The court held that the impossibility which excuses must arise without human intervention. In this ground, the supreme court differs from the English judges, who all held that the fire occurring without plaintiff's fault excused him from performing the contract, and relieved him from all liability for its non-performance.

In a very recent case in Wisconsin (*Cook* v. *McCabe*, 53 Wis. 250), it was held that, where there was not an absolute and indivisible contract to build a complete house for a specific sum, but only a contract to do a part of the work and furnish a part of the materials, the remainder to be otherwise provided for from time to time by the land-owner, though the price was a fixed aggregate sum, and no payment was to be made until the house was completed, and the part built was destroyed by fire before the completion of the whole, the contractor might recover for work and materials done and furnished by him, especially where the owner of the land treated the house as his own by procuring insurance and receiving the insurance-money.

In Illinois, while it is held (*Schwartz* v. *Saunders*, 46 Ill. 18) that, where one undertakes under a contract to do a thing not of itself impossible, he must do it before he can reap any advantage of the contract, it is nevertheless held (*Rawson* v. *Clark*, 70 Ill. 656) that, where one, under a contract with the owner of a building to put into it certain iron-work, had completed the work, except putting it into the house, and the house was in course of erection, and was not ready to receive the iron-work when it was completed, and the building was burned before the iron could be put in, the workman was entitled to recover, as he was not in default and the defendants were bound to provide a building to receive the iron-work, and they, and not plaintiff, are to be held to have assumed the risk of a destruction of the building by fire.

And in Massachusetts (*Lord* v. *Wheeler*, 1 Gray, 282), it was held that a workman who had contracted to repair a house for a certain sum, and who had nearly completed the repairs when the house was destroyed by an accidental fire, was excused from the completion of his contract and entitled to recover for the repairs due. But this case is expressly put upon the ground that when the repairs were substan-

tially done, the defendant entered and occupied, and that such use and employment was a severance of the contract and an acceptance *pro tanto*.

In Texas they do not follow *Appleby* v. *Myers*, but hold, in accordance with the established doctrine of that state as to the apportionability of contracts, that, where one has undertaken to furnish materials and do the wood-work to finish defendant's brick dwelling and to turn over the building complete by a certain day, for the specified gross sum, if the building is destroyed without plaintiff's fault, by fire, while his work is unfinished, he may recover for the work and materials furnished.

The weight of authority in America certainly authorizes the conclusion that, on the facts of this case as we have stated them, plaintiff was entitled to recover. And we think that reason as well as authority preponderates in favor of this view. Plaintiff had not control of the building, and defendant had; plaintiff had no authority over his co-contractors and their employees, nor the right to exclude anybody from the building who might be there by the permission of the building committee. He could not take steps to guard against fire, as might be done by those having control of the building. The fire happened by human agency, and not from any irresistible *vis major*. It is not pretended that the house was struck by lightning; and, in stipulating that this wood-work should be completed, it must have been understood by plaintiff, as it must also have been understood by defendant, that this was upon the implied condition that the building should stand until the expiration of the time accorded to plaintiff within which he was to complete his work. Where the owner of the property retains possession and contracts for work to be done upon it while in his custody, there is, we think, an implied obligation resting upon him to have it in readiness for the work to be performed upon it, and the plaintiff was not bound to provide in the contract for the default of the

other party in the matter of this obligation. So far as regards an impossibility arising from the act of God, neither party need provide against that in his contract; but from an impossibility arising from human agency, and an accidental fire making it impossible to finish the building in time to receive the wood-work, it would seem that the owner and occupier of the building, rather than one having access to it as one of many contractors employed in its repair or construction, should provide.

The instructions need not be set out or commented upon. We think that the court erred in giving a declaration of law to the effect that, upon the pleadings and evidence, plaintiff is not entitled to recover. Other instructions were given which cannot be reconciled with the views expressed in this opinion.

Our attention is called to the statutory provision that no "suit shall be maintained against any tenant or other person in whose house or apartment fire shall accidentally take place; nor shall any recompense be made by any such person for any damages occasioned thereby. Rev. Stats., sect. 667. This section was not intended to have any application to a case such as that before us. Plaintiff does not seek to recover for damages done to him by the fire, but seeks to recover the value of his work, labor, and materials furnished to defendants, notwithstanding their destruction.

The judgment is reversed and remanded. All the judges concur.